UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN P.,[1] | ) |
| | ) |
| Plaintiff, | )   No. 1:24-cv-00894-KMB-SEB |
| v. | ) |
| | ) |
| FRANK BISIGNANO,[2] | ) |
| Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

### ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff John P. applied for disability benefits from the Social Security Administration ("SSA") on April 6, 2021, alleging an onset date of April 6, 2021. [Dkt. 9-2 at 18.] Administrative Law Judge JoErin O'Leary (the "ALJ") issued a decision on September 29, 2023, concluding that John was not disabled and therefore not entitled to receive the requested benefits. [Dkt. 9-2 at 29.] The Appeals Council denied his request for review on March 26, 2024. [Dkt. 9-2 at 2.] On September 23, 2024, John timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Dkt. 13 at 1.]

### I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinion.

[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019).  Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Stephens*, 888 F.3d at 327.  "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'"  *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).  "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327.  Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'"  *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)).  "[E]ven under this deferential standard of review [for social security disability cases], an [ALJ] must provide a logical bridge between the evidence and [the] conclusions."  *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).  The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable

2

of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II. BACKGROUND[3]

John was 61 years old when he applied for disability benefits. [Dkt. 9-3 at 2.]   He

---

[3] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the disposition of this case are discussed below as necessary.

previously worked as a logistics specialist, substitute teacher, and pastor. [Dkts. 9-2 at 29; 9-5 at 4.]

The ALJ followed the five-step evaluation set forth by SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that John was not disabled. Specifically, the ALJ found as follows:

- At Step One, John has not engaged in substantial gainful activity since April 6, 2021, the alleged onset date. [Dkt. 9-2 at 20.]

- At Step Two, John has the following severe impairments: diabetes mellitus with peripheral neuropathy, obstructive sleep apnea, obesity, and hypertension. [*Id.*]

- At Step Three, John does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [*Id.* at 21.]

- After Step Three but before Step Four, John has the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally climb ramps and stairs, balance, stoop, and crouch but never kneel, crawl, or climb ladders, ropes, and scaffolds. He can never be exposed to unprotected heights or dangerous moving mechanical parts." [*Id.* at 22.]

- At Step Four, John is able to perform his past relevant work as a logistics specialist as generally performed. [*Id.* at 29.]

- At Step Five, relying on testimony from the vocational expert ("VE"), and considering John's age, education, and RFC, there were jobs that existed in the national economy that John could have performed through the date of the decision, including his job as a logistics specialist. [*Id.* at 29.]

### III. DISCUSSION

John raises three issues for the Court's review: (1) whether the ALJ violated SSR 96-8p in assessing John's need to elevate his leg, his cane use, and combination of impairments; (2) whether the ALJ violated SSR 24-2p in assessing John's past relevant work; and (3) whether the ALJ violated SSR 16-3p in assessing John's subjective allegations. [Dkt. 13 at 5, 6, 11.] The Court begins with the first issue because the Court finds it to be dispositive.

### A. The ALJ's Failure to Consider Leg Elevation

John argues that the ALJ erred by not addressing John's need to have his leg elevated and not explaining what evidence she relied on to exclude elevation from the RFC assessment. [Dkt. 13 at 6.] John argues that while the ALJ summarized the allegation that he spent three quarters of the day with his leg elevated, the ALJ did not address it in a "narrative discussion format" or explain what evidence was used to exclude it. [*Id.*] John cites several cases showing that it is reversible error for an ALJ to not address a claimant's need to elevate their legs. [*Id.*] John also argues that the ALJ failed to address relevant medical evidence in her opinion including his severe ankle tenderness, reduced strength/mobility, edema, and reduced range of motion in his ankle. [*Id.* at 7.] John specifically emphasizes that he is not requesting the Court to reweigh evidence; rather, he is showing reversible error because symptom-related functional limitations are to be analyzed in RFC assessments and no analysis was performed here. [*Id.*] Finally, John argues that this is not harmless error because the VE stated that the need to elevate one's leg to waist level for four hours in an eight hour day would preclude sedentary work, but the ALJ found John could perform such work. [*Id.* at 8.]

The Commissioner responds by claiming the ALJ provided a "comprehensive review" of John's allegations and the medical evidence and fully discussed all of his impairments. [Dkt. 15 at 6.] The Commissioner points to the ALJ's acknowledgement of John's testimony and argues that John has only "selective evidentiary references" to left ankle tenderness and reduced range of motion. [*Id.*] The Commissioner also notes that John's diabetes physician, Dr. Michael Waddell, checked the least restrictive box available on a medical assessment form for each question. [*Id.* at 7.] The Commissioner also points out that Dr. Waddell believed John was able to obtain and retain work in a competitive full-time setting and never told John he needed to

5

elevate his leg. [*Id.*] The Commissioner argues that John fails to demonstrate that he is more limited than the ALJ found, stating that John is merely critical of the ALJ's summary. [*Id.* at 8.] Finally, the Commissioner argues that John fails to produce evidence establishing an inability to work beyond his own subjective allegations and general symptoms. [*Id.*]

In reply, John argues there was reversible error in failing to analyze symptom-related functional limitations in the RFC assessment. [Dkt. 17 at 4.] John reiterates that he does have evidence supporting his claims of pain and that he does not need a specific medical recommendation to elevate his leg since there is no cited rule or regulation that mandates one prior to accepting the limitation. [*Id.*] John argues that while the ALJ acknowledged some of the evidence, summarizing it is not the same as analyzing it. [*Id.* at 5.] John also counters that while Dr. Waddell did not mention a need to elevate his leg, the ALJ did not rely on this opinion to support the idea that John did not need to elevate his leg, so the Commissioner's argument is impermissible *post-hoc* rationalization. [*Id.* at 6.]

The Seventh Circuit Court of Appeals has continually held that the failure to address a claimant's need to elevate their legs is a reversible error. *See, e.g.*, *Smith v. Astrue*, 467 Fed. Appx. 507, 510 (7th Cir. 2012) (remanding because the ALJ's "perfunctory" statement that "the medical records do not support the limitations alleged by the claimant that she is medically required to elevate her legs" failed to create a logical bridge between the evidence and the conclusion); *Chase v. Astrue*, 458 Fed. Appx. 553, 557 (7th Cir. 2012) (reversing where the ALJ gave no reason for disregarding claimant's testimony that he needed to "significantly elevate" his leg at home). Courts in this District have also consistently held the same. *See, e.g.*, *Misty S. v. Berryhill*, 2018 U.S. Dist. LEXIS 126464, at *7 (S.D. Ind. July 30, 2018) (remanding where the ALJ did not discuss why a potential need to elevate the legs was discredited); *Stacey W. v.*

*Kijakazi*, 2021 U.S. Dist. LEXIS 173963, at *20 (S.D. Ind. Aug. 13, 2021) (reversing where the ALJ omitted any discussion regarding claimant's leg elevation testimony); *Matthew T. v. Kijakazi*, 2022 U.S. Dist. LEXIS 130278, at *11 (S.D. Ind. July 21, 2022) (reversing when "the ALJ did not address whether Claimant would need to elevate his legs at work").

      The Court agrees with John that the ALJ did not properly address the evidence regarding the need to elevate his leg. The ALJ devoted multiple lines in her opinion to summarizing John's testimony regarding his leg elevation habits. [Dkt. 9-2 at 22.] This is an adequate summary, but it lacks any accompanying analysis regarding why the ALJ did not credit John's evidence or include that limitation in crafting the RFC. Put another way, the ALJ neither reaches a conclusion regarding the credibility of John's testimony nor explain how she considered or dismissed John's reported need for elevation in crafting the RFC. Without accompanying analysis or explanation, no "logical bridge" has been built, creating reversible error. *See Smith*, 467 Fed. Appx. at 510 ("An ALJ must explain her reasoning, building a so-called 'logical bridge' that connects the evidence and her decision.") (citations omitted); *see also Gonzalez v. Colvin*, 2014 U.S. Dist. LEXIS 129108, at *21 (N.D. Ill. Sept. 16, 2014) (reversing where the ALJ never evaluated testimony that the claimant needed to elevate his leg, and stating that on remand the ALJ should expressly address this and explain her rejection). An ALJ is allowed to discredit testimony, but here, there is no explanation—the Court has no way of knowing if the ALJ considered leg elevation at all. *Robinson v. Colvin*, 2014 U.S. Dist. LEXIS 69903, at *28 (N.D. Ill. May 21, 2014) (reversing where the ALJ "gave no reason for disregarding [claimant]'s testimony [regarding her leg elevation] and failed to explain why it was not credible.").

      The ALJ also failed to address the limitations discussed in the VE's testimony. During the hearing, the VE testified, in response to direct questioning from the ALJ, that the need to

7

elevate one's leg to waist level for four hours in an eight-hour workday would preclude even sedentary work. [Dkt. 9-2 at 58.] However there is no mention of this limitation in the ALJ's opinion. The fact that the ALJ did not address leg elevation at all is particularly problematic in light of the VE's testimony. *See Robinson*, 2014 U.S. Dist. LEXIS 69903, at *28 (finding the failure to address claimant's alleged need to elevate her legs was "particularly important" because of testimony from the VE that the need to elevate one's legs for half the workday would preclude work).

While it is true that John never received a direct doctor's recommendation to elevate his leg, this merely demonstrates a gap in the medical record. *See Dante v. Colvin*, 2013 U.S. Dist. LEXIS 116076, at *29 (N.D. Ill. Aug. 16, 2013) ("Although no other physicians recorded this recommendation in their notes . . . the absence of the statement in the medical records is only substantial proof of the fact that the recommendation was never recorded."). Importantly, the record clearly shows John's doctors were informed he elevates his leg to deal with pain. [*See, e.g.*, dkt. 9-3 at 6 (doctor's note indicating John "elevates his foot").] Despite this knowledge, no physician said it was *not* necessary. *See Bonzi v. Kijakazi*, 2023 U.S. Dist. LEXIS 159167, at *7 (N.D. Ill. Sept. 8, 2023) (ruling that even without an explicit order, the fact claimant reported she elevated her legs to her doctors and they did not dissuade her from doing so was sufficient to support her claims). While a direct doctor recommendation would be the most solid evidence of a need to elevate one's leg, the mere absence of such a recommendation is not fatal to John's claim under the circumstances presented by this case. *Dante*, 2013 U.S. Dist. LEXIS 116076, at *29.

The Commissioner argues that because Dr. Waddell did not recommend leg elevation, it was not necessary. *See Robinson v. Berryhill*, 2017 WL 2215022, at *9 (N.D. Ill. 2017) ("The lack of medical record specifically referencing Plaintiff's need to elevate her legs is the most

8

convincing reason offered by the ALJ to discredit Plaintiff . . . ").  The ALJ found Dr. Waddell's opinion persuasive "to the extent that it indicates that the claimant would not have limitations in being off task, work efficiency, or missing work."  [Dkt. 9-2 at 28.]  However, as John argues in his reply brief, the ALJ did not rely on Dr. Waddell's opinion to determine that leg elevation was not necessary, and the Commissioner's attempt to link these distinct parts of the opinion is an impermissible *post-hoc* rationalization.  *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943).

Even assuming for the sake of the argument that the ALJ did rely on Dr. Waddell's form to conclude that John did not need to elevate his leg, she nonetheless failed to explain how the form undermined the contrary evidence presented.  *See Smith*, 467 Fed. Appx. at 510 (reversing where the ALJ cited medical records but did not explain how they undermined claimant's testimony that she needed to elevate her leg).  This assumption also fails under the fact that the form asked nothing about leg elevation, and as noted above, a mere lack of a recommendation is not fatal to a claim.  While the ALJ acknowledged in the hearing that there were differing medical opinions regarding John's limitations, she did nothing to address this in her opinion.  [Dkt. 9-2 at 54.]

This case must be remanded because John has shown that the ALJ committed reversible error.  Specifically, the ALJ erred because she failed to analyze the evidence regarding John's leg elevation, and such an omission means that she could not, and did not, create the required logical bridge when crafting the resulting RFC that omitted a leg elevation limitation.

### B.  Other Arguments

Having found that remand is necessary for the reasons detailed above, the Court declines to address John's remaining arguments.  John may raise his other concerns on remand if he deems it appropriate to do so.

9

## IV.  CONCLUSION

For the reasons stated above, the Court **REVERSES** the Commissioner's decision denying John benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4).  Final judgment shall issue accordingly.

**SO ORDERED**.

Date: 7/16/2025

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution

All ECF-registered counsel of record via email